693 So.2d 1055 (1997)
Willie N. LEWIS, Appellant,
v.
STATE of Florida, Appellee.
No. 96-0073.
District Court of Appeal of Florida, Fourth District.
May 14, 1997.
*1056 John A. Garcia of John A. Garcia, Esquire, P.A., West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and William A. Spillias, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, Judge.
Appellant, Willie Lewis, was tried by jury, convicted of throwing a deadly missile at a building, and sentenced to 41 months incarceration. We affirm and write to address appellant's sole point on appeal, that the trial court erred in instructing the jury on the law of "principals."

The testimony at trial
On April 21, 1995, at 1:30 a.m., appellant, Willie Lewis, went to the home of his ex-fiancee, Melonie Cunningham, to ask for his clothes and a television set. Ms. Cunningham was living in her house in Boca Raton with her mother, her three boys (two of whom are appellant's), and her new boyfriend, Timothy Johnson.
Ms. Cunningham was asleep when appellant arrived. Both she and Mr. Johnson got up and spoke with appellant. Ms. Cunningham had already packed up appellant's clothes and had placed them outside by the front door. She would not, however, give appellant the TV because it was rented in her name. About fifteen minutes after appellant arrived, he left with his clothes, never having entered the house. Ms. Cunningham then returned to bed.
At around 3:00 a.m., Ms. Cunningham was suddenly awakened by an explosion. There was a fire in her room, which she managed to extinguish with a couch cushion. The fire caused some damage in the room, but nobody was hurt. It was later discovered that a bottle filled with gasoline and stuffed with a burning rag had been thrown through her window. This type of firebomb device is commonly known as a "Molotov cocktail."
Mark Polk testified that appellant had been living at Polk's home on April 21, 1995, the date of the firebombing. Polk testified that on the afternoon of April 20, appellant told him that he was going to throw a gas bomb into Melonie Cunningham's house. Polk said that appellant was upset over an argument he had had with Cunningham over a television set. Polk told appellant not to do it because there were children in the house. According to Polk, appellant assured him that he knew exactly where the children would be.
Some time after midnight on April 21, Polk was awakened by appellant knocking on the door. Appellant seemed nervous and told Polk that he had thrown the gas bomb into Ms. Cunningham's bedroom window. Polk was not certain what time this took place, but figured that it was 12:00 or 12:30 a.m. because Beavis and Butthead was on TV. He testified that it was not as late as 3:00 a.m., the approximate time of the offense. Polk did not note any smell of gasoline on appellant. Appellant then left the house and returned again at 4:00 or 5:00 a.m..
Polk testified that he keeps a plastic container of gasoline for use in his lawn maintenance business. It is a five gallon container fitted with a tube, and he keeps track of the gas with markings on the container. The morning after the firebombing, Polk noticed about half a gallon of gas missing from the container. Officer Cosova testified that during her investigation in the days following the crime, she saw a five gallon plastic container of gas fitted with a hose on the porch of Polk's house.
After all the testimony had been taken, the State requested that the jury be instructed on principals and explained why:
Based on the statements that the defendant made earlier that afternoon, this is clear, and the act occurring early that morning, there is just too much coincidence.
There is no way that he didn't know that it's going to happen and somehow participated in the fire bombing. We believe there is ample evidence to show that, and somehow he participated. There is too *1057 much coincidence, something like that would not happen.
Defense counsel responded:
I clearly disagree with that. I mean, there has been no evidence presented for this Court that would show that the State has alleged at any point that anybody has been involved in this other than Mr. Lewis.
It's purely speculation on their part. I think they are just reaching at this point. I think that is going to confuse the jury. They are going to start thinking something might have taken place they weren't told about.
The judge decided to give the instruction.[1]

Discussion
Jury instructions requested by the State "must relate to issues concerning evidence received at trial." Butler v. State, 493 So.2d 451, 452 (Fla.1986); accord Buford v. Wainwright, 428 So.2d 1389, 1390-91 (Fla.) ("Only instructions which have support in the record should be given to the jury."), cert. denied, 464 U.S. 956, 104 S.Ct. 372, 78 L.Ed.2d 331 (1983); Griffin v. State, 370 So.2d 860, 861 (Fla. 1st DCA 1979)(a charge requires an "appropriate factual basis in the record").
Therefore, it is generally error to instruct the jury on principals where there is no evidence to support an aiding and abetting theory of guilt because the jury may be confused by the instruction. However, in order for the unnecessary instruction to constitute reversible error, it must, under the circumstances of the case, be capable of misleading the jury in such a way as to prejudice the defendant's right to a fair trial. For example, in Hair v. State, 428 So.2d 760, 763 (Fla. 3d DCA 1983), Hair and a co-defendant were jointly tried for a series of rapes perpetrated on the victim. The court held that it was error not to inform the jury that the instruction on principals applied only to Hair's co-defendant and not to him where an unknown third party may have participated with the co-defendant in the first rape, and the State acknowledged that Hair did not act in concert with anyone in committing the second rape. The court noted that the risk of confusion was prejudicial because, in the context of that case, the principals instruction "left it unclear whether it referred to Hair or the unknown third party." Id. at 763.
Likewise, in Lovette v. State, 654 So.2d 604, 605-06 (Fla. 2d DCA 1995), the court reversed a conviction where it found an insufficient evidentiary basis for an instruction on principals and the likelihood that the instruction confused the jury. There, the State presented testimony that the defendant was seen carrying boxes out of the victim's apartment by himself. The defendant testified that he had received the goods, not knowing that they were stolen, from some neighbors in exchange for crack cocaine. The court found that it was error to instruct the jury on the law of principals since there was no evidence that Mr. Lovette acted in concert with anyone in committing the theft or the burglary. The court noted that there may have been evidence that he acted in concert with his neighbors with respect to dealing in stolen property, but he was not charged with that crime. In finding that the unnecessary principals instruction was prejudicial, the court stated:
It is obvious from the questions posed during its deliberations that the instruction confused the jury. Additionally, this instruction misled the jury to think that it had to convict Mr. Lovette of both charges if it found he helped the neighbors sell the stolen items.
Id. at 606.
In the instant case we find that the instruction on the law of principals was within *1058 the appropriate discretion of the trial court in view of the evidence presented at trial. The State advanced dual theories of the case: (1) the State's primary assertion was that Appellant personally threw the Molotov cocktail; and (2) that even if he did not, he was sufficiently involved in the crime to be found guilty as an aider and abettor. Regarding this second theory, the prosecutor argued:
[T]he Judge is also going to give you a principal instruction, and that is whether or not he knew it was going to happen and he didn't happen to be there.
* * * * * *
[H]e either knew what was going to happen, played an active role in making it happen, or he threw it through that bedroom window.[2]
Trial judges have wide discretion in decisions regarding jury instructions, and the appellate courts will not reverse a decision regarding an instruction in the absence of a prejudicial error that would result in a miscarriage of justice. Sheppard v. State, 659 So.2d 457, 459 (Fla. 5th DCA 1995). A conviction for aiding and abetting requires the State to prove (1) the defendant's intent that the crime be committed; and (2) the defendant's performance of some act to assist in the commission of the crime. See § 777.011, Fla.Stat. (1995); Staten v. State, 519 So.2d 622, 624 (Fla.1988). In this close case concerning whether there was sufficient evidence of aiding and abetting to support an instruction on the law of principals, we cannot conclude that the trial court abused its discretion.

An act in furtherance of the firebombing permissible inference?
The State's unknown accomplice theory would likely be impermissible speculation in a typical case; however, here that theory is made plausible by words which allegedly came from appellant's own mouthappellant said that he was going to do it, then afterward said that he had done it, and in fact, the firebombing did take place. That the final consummation of the firebombing required some form of human agency is a matter not of speculation, but rather, the application of common sense. The State is not required to prove every detail with which the defendant commits a crime so long as the essential elements of the offense are established beyond a reasonable doubt. See Purifoy v. State, 359 So.2d 446, 449 (Fla.1978), and the cases cited therein for the "fundamental rule that the prosecution must prove every essential element of the crime charged."
The combined evidence of appellant's statement on the afternoon prior to the crime that he was going to firebomb Ms. Cunningham's home, appellant's subsequent statement on the morning of the crime that he had indeed accomplished the act, plus the missing gasoline which appellant had access to, certainly could have led the jury to conclude that appellant was actively involved in firebombing Ms. Cunningham's bedroom. Further, the jury could have reasonably interpreted appellant's confession as acknowledging responsibility for some lesser, albeit active, role in the crime.[3] The evidence that appellant confessed at 12:30 a.m., when the crime may have actually taken place hours later, would support the theory that appellant may not have acted alone.
Thus, we conclude that without the principals instruction, the jury would have been left in a quandary over what the law required under a certain set of facts that were reasonably inferable from the evidence, an event which the trial court rightly prevented from occurring.[4] Accordingly, we cannot say that the trial court abused its discretion in instructing the jury on the law of principals.
AFFIRMED.
*1059 GROSS, J., concurs.
FARMER, J., dissents with opinion.
FARMER, Judge, dissenting.
As the majority correctly shows, "jury instructions requested by the state `must relate to issues concerning evidence received at trial.' " Op. at 1057, citing Butler v. State, 493 So.2d 451, 452 (Fla.1986) and Buford v. Wainwright, 428 So.2d 1389, 1390-91 (Fla.), cert. denied, 464 U.S. 956, 104 S.Ct. 372, 78 L.Ed.2d 331 (1983). But as these cases demonstrate, it is obviously not enough that a requested instruction relate to the state's "theory of the case." Op. at 1057. On the contrary, they hold that there must be actual evidence in the record supporting the theory of prosecution. In this case, the state's request for a "principals" instruction founders on the absence of any actual evidence to support its theory that if defendant did not do the act, somebody else did it with his participation.
In affirming, the majority applied the abuse of discretion standard. The majority states that:
"[t]rial judges have wide discretion in decisions regarding jury instructions, and the appellate courts will not reverse a decision regarding an instruction in the absence of a prejudicial error that would result in a miscarriage of justice."
Op. at 1058. They support that proposition with a citation to Sheppard v. State, 659 So.2d 457, 459 (Fla. 5th DCA 1995), where the fifth district made the same observation. The fifth district, in turn, relied on Goldschmidt v. Holman, 571 So.2d 422 (Fla.1990). Although a civil case, Goldschmidt is pertinent because the principles that underlie giving or refusing to give jury instructions are identical in civil and criminal cases. Goldschmidt involves a medical malpractice action in which the plaintiff sought to hold one doctor responsible for the negligence of another doctor who was "covering" for him. The trial court refused to submit to the jury a question as to whether the original doctor was liable for the covering doctor. The judge also refused to give a jury instruction, requested by the plaintiff, on "concurring cause." The district court reversed upon a holding that plaintiff was not required to plead that the covering doctor was an agent of the original doctor and, further, that the trial court should have given the concurring cause instruction.
First the supreme court held that it was necessary to plead agency to hold the original doctor liable for the negligence of the covering doctor. Plaintiff had requested an instruction on agency but the trial court determined that such a claim had not been pleaded. The supreme court reversed the district court. Although there was expert opinion evidence in the record that the covering doctor was negligent, the court held that "there was no evidentiary question in this case for the jury to resolve." 571 So.2d at 424.
The court then noted that the pleading deficiency did not resolve the question as to whether the plaintiff was entitled to a jury instruction on concurring cause, as the district court had held in its reversal. In reversing the district court on this issue, the court reasoned:
"Decisions regarding jury instructions are within the sound discretion of the trial court and should not be disturbed on appeal absent prejudicial error. Prejudicial error requiring a reversal of judgment or a new trial occurs only where `the error complained of has resulted in a miscarriage of justice.' § 59.041, Fla.Stat. (1989). A `miscarriage of justice' arises where instructions are `reasonably calculated to confuse or mislead' the jury. Florida Power & Light Co. v. McCollum, 140 So.2d 569, 569 (Fla.1962).
"Under the circumstances presented in this case, we find there was no `reasonable possibility that the jury could have been misled by the failure to give the instruction.' Ruiz v. Cold Storage & Insulation Contractors, Inc., 306 So.2d 153, 155 (Fla. 2d DCA), cert. denied, 316 So.2d 286 (1975); see Wilson v. Boca Raton Community Hosp., Inc., 511 So.2d 313, 314 (Fla. 4th DCA), review denied, 519 So.2d 988 (Fla.1987).
"The thrust of the entire trial centered solely upon whether Goldschmidt was negligent in misdiagnosing Taletha's appendicitis. *1060 At all times Goldschmidt defended on the ground that he was not negligent. No one argued or presented evidence that any other operative cause was present. Neither Goldschmidt nor the Holmans ever asserted that the preexisting appendicitis caused any part of Taletha's injury. To the contrary, the Holmans' own expert testified that had Goldschmidt not been negligent, Taletha would have been `operated on and [sent] home in a couple of days completely well.'
"Likewise, there was no evidence or argument to the jury that [the covering doctor's] alleged negligence was a cause of the injury separate and apart from Goldschmidt's negligence. While the Holmans' expert testified that [the covering doctor] was negligent, no one testified what effect, if any, [the covering doctor's] alleged negligence had on Taletha's injury or how it operated in relation to Goldschmidt's alleged negligence. Because the evidence was insufficient to support a concurring causes instruction on either the preexisting appendicitis or Soud's alleged negligence, the district court erred in reversing the trial court's denial of the instruction." [e.s.]
571 So.2d at 425.
Hence, Goldschmidt does state the abuse of discretion formulation about "miscarriage of justice" and whether the failure to give the instruction "misled the jury." In reality, however, the supreme court based its reversal on the absence of any evidence to support an instruction. It is an abuse of discretion to give a jury instruction when there is no evidence in the record to support the instruction, because giving an instruction without an evidentiary predicate is generally calculated to mislead a jury. I think this proposition would be undeniably true in nearly every criminal prosecution.
Here, it was an abuse of discretion to give the principals instruction because it allowed the jury to base a verdict of guilty on speculation that, even if defendant did not do the criminal act itself, he could be found guilty if the jury believed that he "was actively involved" in somebody else doing the act. Op. at 1058. There is absolutely not a single piece of evidence that any other person "was actively involved," or assisted defendant in carrying out the crime, or alone carried out defendant's plan, or the like.
To support its conclusion that the principals instruction was properly given in this case the majority hypothesizes that defendant furnished an "unknown accomplice" with gasoline, or that defendant "engaged a third party" to throw the firebomb. The alternative theory of an unknown accomplice is permissibly inferable, they say, from evidence that defendant told another person that he, the defendant, was going to do the act and then, afterwards, that he had actually done it. But, of course, defendant's statements yield no such inference at all. There is no hint in defendant's statements of someone aiding him in the enterprise; rather his words demonstrate merely that he himself intended to do the act and later that he had carried his plan into fruition. Without a suggestion in these statements that another person was helping him or participating in some way, the only possible inference from these statements is that defendant, himself, actually carried out his scheme.[5]
The prosecution wanted the principals instruction because there was an inherent conflict in its case. I speak, of course, of the conflict in time between defendant's statement that he had done the deed and the evidence as to when the deed actually occurred. In other words, defendant seems to have bragged of doing the act before it was done. This conflict gave rise to some obvious prosecutorial discomfort with trying this case on the straightforward basis that defendant did what he said he was going to do and later claimed to have done.
I am simply incapable of comprehending, however, how that conflict yields any reasonable conclusion that another person aided and abetted defendant. I do see how the conflict might theoretically lead a jury to question defendant's guilt (although I doubt that it actually would), but that hardly permits *1061 the prosecution to argue that "well, maybe somebody else helped him do it." It seems to me that, if the prosecution was to go to the jury on the aider and abetter theory, it had to adduce some evidence somewhere along the line that there was somebody else involved. But there is not a single piece of evidence that anyone in the world other than defendant was involved.
The majority does not appear to confront how giving the principals instruction in the absence of evidence of another person's involvement affected the jury. Instead they merely say that "we see no undue confusion or specific prejudice in the instant case." I think this ipse dixit masks an inability to explain how it could not possibly have created confusion and mislead jurors. Indeed, it is the presence of the conflict in the evidence as to timing of events that leads me to conclude that giving the principals instruction did actually confuse and mislead this jury. With the instruction on principals, the jury could simply assumeas, indeed, the majority has donethat even without such evidence somebody must have helped defendant in carrying out the act.
I think the majority decision conflicts with the supreme court's decision in Goldschmidt. Accordingly, I would reverse for a new trial.
NOTES
[1] The instruction read:

3.01 PRINCIPALS
If two or more persons help each other commit or attempt to commit a crime and the defendant is one of them, the defendant is a principal and must be treated as if he had done all the things the other person or persons did if the defendant:
1. Knew what was going to happen,
2. Intended to participate actively or by sharing in an expected benefit and
3. Actually did something by which he intended to help commit or attempt to commit the crime.
"Help" means to aid, plan, or assist.
To be a principal, the defendant does not have to be present when the crime is committed or attempted.
[2] Although the prosecutor's argument on the law of principals was disjointed and incomplete, the court's instruction on this issue was clear and comprehensive.
[3] Indeed, such an interpretation of appellant's confession would be consistent with the theory behind the law of principals, i.e., that active participation in a part of the crime makes the actor guilty of the whole.
[4] Even if giving of the principals instruction was unnecessary, we see no undue confusion or specific prejudice in the instant case.
[5] So too with the evidence that he had access to the missing gasoline. No other person is mentioned by any witness with regard to the gasoline except defendant.