942 So.2d 433 (2006)
STATE of Florida, Appellant,
v.
John Dean HAMNER, Appellee.
Nos. 4D05-1498, 4D05-1549.
District Court of Appeal of Florida, Fourth District.
October 25, 2006.
Rehearing Denied December 11, 2006.
*434 Charles J. Crist, Jr., Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for State of Florida.
Scott I. Suskauer of The Suskauer Law Firm, P.A., West Palm Beach, for John Dean Hamner.
SHAHOOD, J.
John Dean Hamner was found guilty by a jury of one count of sexual battery without physical force. At sentencing, the trial court found that the offense was committed in an unsophisticated manner and was an isolated incident for which Hamner had shown remorse. The trial court imposed a downward departure sentence of thirty months in the Department of Corrections, followed by three years probation with no special conditions. The State appeals the trial court's imposition of a downward departure sentence. We affirm the sentence, as we find no error in the court's imposition of a downward departure sentence in this case. We write to address the second and third issues Hamner raises on cross-appeal.
Prior to trial, the prosecutor made a motion in limine seeking to preclude the defense from questioning the victim about a prior addiction to pain medication. The prosecutor stated that the addiction was several years prior to the events at issue, and that the victim had gone into drug rehabilitation and had been "clean" since that time. The prosecutor also stated that while the victim admitted being intoxicated from alcohol on the night of the incident, there was no indication that the victim was also using pain medication. The defense objected, arguing that the pain medication issue would be relevant to the victim's ability to recall events. The trial court granted the State's motion in limine on the basis that the questioning would be irrelevant unless the defense had some evidence that the victim was using pain medication on the night of the incident.
*435 The undisputed testimony at trial showed that on June 24, 2003, Hamner and the victim were in West Palm Beach as part of a sales event for the company for which they both worked. They were not previously acquainted with one another. The two were randomly paired together for the day's events by their supervisors and spent the day making sales calls to various businesses. That evening, the victim, Hamner, and several co-workers went to dinner at CityPlace. The victim consumed three or four alcoholic beverages at dinner. She testified that after dinner she began to feel "woozy" from the alcohol.
The victim returned to her hotel with Hamner and her boss, Mr. Mosby. The victim did not remember the car ride back to the hotel and believes she passed out. Mosby testified that the victim said she felt dizzy, and that when the car reached the hotel parking lot, the victim slumped over, with her head on Hamner's shoulder.
Hamner and Mosby helped the victim to her hotel room because she was unsteady from the alcohol. The victim remembered walking from the car to the hotel entrance but did not remember the walk from the hotel entrance to her room. Mosby testified that they put the victim on the bed, and she fell back. They left her on the bed to sleep off the effects of the alcohol. She was fully clothed.
The victim and Hamner offered conflicting testimony as to what happened next. The victim testified that the next thing she remembered was being in her hotel room completely naked and turned sideways. Hamner was on top of her, engaging in sexual intercourse with her. She told him several times to stop and "no." She was crying. She tried to get away by scooting across the bed, but hit her head on the credenza and blacked out again. During the State's redirect examination, the victim stated that the words "stop" and "no" may have been slurred when she spoke them, and that she was not sure how loudly she spoke them. The trial court denied defense counsel's request to conduct recross-examination of the victim.
Hamner testified on his own behalf. According to his version of events, he returned to the victim's room because he realized that he still had her room key from helping her into her room earlier, so he decided to return the key and check on her. After she did not answer her door, he let himself in using the key. He found the victim lying on the floor. He went to pick her up, and at this point, the victim began hugging and kissing his neck. The victim then took out Hamner's penis and began to perform oral sex on him. Hamner backed away because he did not feel it was appropriate.
Hamner testified that the victim complained of a headache so he went into the bathroom to look for some aspirin. When he returned into the main room, the victim was naked from the waist down and was taking off her bra. She asked Hamner to have sex with her. He refused, and the victim rolled onto her back and started grabbing at him again. She took down his pants and fondled him and then inserted his penis inside of her vagina. Hamner withdrew when he felt the sensation of ejaculation coming on. Hamner stated that the victim was intoxicated, but "she was fine." She was not crying and did not want Hamner to leave the room. He adjusted the air conditioning in the room and adjusted the blanket over her before he left the room. The victim reported the incident to hotel personnel later that night, and the police were called to the hotel.
As his second issue on cross-appeal, Hamner argues that the trial court erred in granting the State's motion in limine because it precluded the defense *436 from asking the victim if she were taking any pain medication on the night of the incident. Hamner contends this would go to the victim's memory loss and the issue of consent. The State maintains that the trial court's ruling was correct because the defense made no showing that the victim may have been taking pain medication on the night of the incident.
"A trial judge's ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion." Dessaure v. State, 891 So.2d 455, 466 (Fla. 2004). Hamner sought to admit evidence of drug use to impeach the victim's credibility. Evidence of drug use for the purpose of impeachment should be excluded unless:
(a) it can be shown that the witness had been using drugs at or about the time of the incident which is the subject of the witness's testimony; (b) it can be shown that the witness is using drugs at or about the time of the testimony itself; or (c) it is expressly shown by other relevant evidence that the prior drug use affects the witness's ability to observe, remember, and recount.
Trease v. State, 768 So.2d 1050, 1054 (Fla. 2000) (quoting Edwards v. State, 548 So.2d 656, 658 (Fla.1989)).
We conclude that the trial court did not abuse its discretion in granting the State's motion in limine that prevented defense counsel from asking the victim about prior drug addiction. The trial court's ruling left the defense free to question the victim about her use of pain medication if the defense could show that it was relevant to the night of the incident. However, the defense failed to make a showing that the victim was under the influence of pain medication on the night of the incident, during her trial testimony, or that her prior addiction from several years prior to the incident would affect her ability to observe, remember, or recount events. We find insufficient Hamner's bare contention that the victim could not have been as intoxicated as she apparently was after only three or four drinks. In the absence of the required showing, any testimony regarding the victim's use of pain medication was irrelevant and the trial judge's ruling was correct. See Trease, 768 So.2d at 1054 (holding appellant could not claim error who failed to establish via proffer that the testimony he sought to elicit regarding witness's drug use satisfied Edwards).
As the third issue raised on cross-appeal, Hamner argues that the trial court erred because the denial of recross following the prosecutor's redirect examination denied him the right to explore new matter that was brought up regarding the victim's consent. Specifically, Hamner argues that it prevented the defense from challenging the reliability of the victim's claims that she told Hamner "no" and "stop." We disagree.
"[T]rial judges are afforded broad discretion in controlling the scope of cross-examination." Werner v. Scharlop, 867 So.2d 1172, 1173 (Fla. 4th DCA 2004). "[A]lthough wide latitude is permitted on cross-examination in a criminal trial, its scope and limitation lies within the sound discretion of the trial court and is not subject to review except for a clear abuse of discretion." Diaz v. State, 747 So.2d 1021, 1023 (Fla. 3d DCA 1999) (quoting Tompkins v. State, 502 So.2d 415, 419 (Fla. 1986)).
The record reflects that on direct examination by the State, the victim testified that she told Hamner several times "no" and "stop." The defense then proceeded to cross-examine the victim on the manner in which she said "no," specifically focusing on how loudly she had said it. The defense *437 had an opportunity to inquire further on this topic during cross-examination, and failed to do so. Hamner's characterization of the clarity with which the victim said "no" as "new material" is unconvincing in light of counsel's prior questioning on cross-examination regarding the volume of the victim's protestations. We find that the trial court did not abuse its discretion in denying the defense an opportunity to conduct a recross-examination of the victim.
The State also contends that any possible error resulting from the trial court's denial of the defense's request to conduct recross-examination of the victim was harmless under the circumstances of this case. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). We agree. The harmless error test focuses on the trier of fact, and "[t]he question is whether there is a reasonable possibility that the error affected the verdict." Id. at 1139. In addition to the victim's testimony on redirect examination that she may have slurred her words, multiple witnesses testified that after the incident, the victim was still slurring her speech. These witnesses included a responding police officer, the victim's mother, and a hotel employee. The jury was well-informed that the victim was slurring her speech at the time of the incident and afterwards. Assuming arguendo that the trial court erred in denying recross-examination, we find no reasonable possibility that this contributed to Hamner's conviction. See id.
We affirm as to all other claims.
Affirmed.
TAYLOR, J., concurs.
FARMER, J., dissents with opinion.
FARMER, J., dissenting.
Once again, I am compelled to dissent from an unreasonable restriction on cross examination by a defendant in a criminal case. In this case the restriction is doubly difficult to understand because this is a classic she-said-he-said issue of sexual misconduct.
The charge was sexual battery. The defense was consent. She was the accuser, the first and principal witness. After her cross examination, the trial judge allowed the State to have redirect examination as to the subject of the witness's assertions that during the encounter she repeatedly said "no" and asked him to stop. There can be no doubt that this subject was the heart of the case, not merely a collateral issue. During the redirect examination the State elicited a concession from the witness for the first time that her protestation and demand were slurred, although, she said, understandable. She also said she was not sure how loud she said the words. She added that she was scared when she made these protestations. When the State finished its redirect, defense counsel asked for a brief recross examination. The trial court simply said "no".
Once the court allowed the State the privilege of redirect examination, the door was open to recross examination. The discretion of the trial judge was now to stop such questioning from becoming cumulative, repetitive or harassing questioning. It was not to bar it entirely, especially after having allowed the State to ask its extra questions. In my opinion, on its face and without regard to the content of the redirect, this is a palpable abuse of discretion.
"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." Davis v. Alaska, 415 U.S. 308, 316, *438 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Cross examination by defendants in criminal cases is not simply a matter of grace but is required by the Confrontation Clause of the Sixth Amendment. "Our cases construing the (confrontation) clause hold that a primary interest secured by it is the right of cross-examination." Davis, 415 U.S. at 315, 94 S.Ct. 1105 (quoting Douglas v. Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965)). When testimony on redirect deals with the "central issue in a criminal trial" it is error to exclude recross examination. Bordelon v. State, 908 So.2d 543, 546 (Fla. 1st DCA 2005); Baucham v. State, 881 So.2d 95, 97 (Fla. 1st DCA 2004) (holding limitation on cross-examination of witness testifying on an issue central to defense was reversible error).
The majority says that defendant's "characterization of the clarity with which the victim said `no' as `new material' is unconvincing." The majority reasons that, because defense counsel's prior questions on cross examination dealt with the "volume" of the victim's protestations, it was not an abuse of discretion to bar all recross examination as to the witness's testimony on redirect. While counsel's characterization of the need for recross examination might be unconvincing to judges, the result of such questions might equally have been quite convincing to jurors as to which one was telling the truth. With respect, the majority reliance on how convincing the defendant's purpose was in engaging in recross examination is simply wrong.
First, if the redirect had been simply a rehash of previous direct and cross examination, it would not have been permissible. Obviously, the State thought otherwise in seeking to have its redirect. Second, the redirect barely mentioned the "volume" or loudness of her demands to stop. It did address her slurring, which was a new concession from the witness. It also addressed whether she was scared when she said it. It also addressed whether she was having difficulty breathing when she said it. Plainly in context these things could reasonably be considered newespecially to the jury.
I note that defense counsel objected to the last question on redirect as "asked-and-answered". If the other questions on redirect had also previously been asked and answered, is it reasonable to suppose that counsel would have stood idly by without protest? Remember this was redirect examination, which is permitted only to address new matter. And even if it had been all cumulative, why is only the State being allowed to engage in cumulative examination of its essential witness?
This was a very close case. There was no conclusive evidence that the sexual engagement was not consensual. In this kind of criminal case, cross examination takes on an importance and significance beyond the basic requirement of the Confrontation Clause. The reliability of the testimony of the witness turned on subtle aspects, tone and manner, timbre and appearance, eye contact and affect. When guilt hangs on such qualities underlying the believability of witnesses, everything depends on cross examination. Just as discretion should permit few subjects to be excluded during cross examination of the defendant when he testifies as to his version of events, so also should discretion treat the subject of recross examination of the State's principal witness. I think it was a manifest abuse of discretion to refuse recross examination.
It also follows that I think the exclusion was prejudicial. It is ironical that the majority bases its conclusion of harmlessness on the very testimony of this witness. I was not aware, until now, that appellate *439 judges could base a proper harmless error analysis about an exclusion of cross examination by pointing to the weight of the direct testimony of the same witness! I frankly do not understand how any judge can say beyond a reasonable doubt that the exclusion had no effect on the trier of fact.
Indeed, it is impossible to assess the weight of an error involving the refusal to let the jury hear cross examination that they should have heard. There is no method for assessing the effect on the jury of not seeing the witness tested, other than to know that the jury was denied the opportunity to see a witness react to this essential form of testing reliability of testimony. I would treat utter refusals to permit this kind of questioning as structural. See Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (holding that structural defects "defy analysis by `harmless-error' standards" because they "affec[t] the framework within which the trial proceeds" and are not "simply an error in the trial process itself"). Just as the Court regards the refusal to allow a defendant to have counsel, so also I would treat a refusal to let counsel engage in the essential function of cross examination as structural. See United States v. Gonzalez-Lopez, ___ U.S. ___, ___, 126 S.Ct. 2557, 2564, 165 L.Ed.2d 409 (2006) (resting conclusion of structural error of refusing counsel upon difficulty of assessing the effect of error).