GERBER, J.
The defendant below, convicted and sentenced for sexual battery without physical force, appeals the trial court’s denial of his motion for postconviction relief alleging ineffective assistance of counsel. To prevail on a claim of ineffective assistance, a defendant must show (1) that counsel’s performance was deficient, and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Here, even if defendant’s trial counsel’s performance was deficient in limited respects, no reasonable probability exists that trial counsel’s performance ultimately prejudiced the defendant. Therefore, we affirm.
First, the facts. In an earlier opinion, this court affirmed the defendant’s conviction and sentence. State v. Hamner, 942 So.2d 433 (Fla. 4th DCA 2006).[1] That decision describes the facts as follows:
The undisputed testimony at trial showed that on June 24, 2003, Hamner and the victim were in West Palm Beach as part of a sales event for the company for which they both worked. They were not previously acquainted with one another. The two were randomly paired together for the day’s events by their supervisors and spent the day making sales calls to various businesses. That evening, the victim, Hamner, and several co-workers went to dinner at City-Place. The victim consumed three or four alcoholic beverages at dinner. She testified that after dinner she began to feel “woozy” from the alcohol.
The victim returned to her hotel with Hamner and her boss, Mr. Mosby. The victim did not remember the car ride back to the hotel and believes she passed out. Mosby testified that the victim said she felt dizzy, and that when the car reached the hotel parking lot, the victim slumped over, with her head on Hamner’s shoulder.
Hamner and Mosby helped the victim to her hotel room because she was unsteady from the alcohol. The victim remembered walking from the car to the hotel entrance but did not remember the walk from the hotel entrance to her room. Mosby testified that they put the victim on the bed, and she fell back. They left her on the bed to sleep off the effects of the alcohol. She was fully clothed.
The victim and Hamner offered conflicting testimony as to what happened next. The victim testified that the next thing she remembered was being in her hotel room completely naked and turned sideways. Hamner was on top of her, engaging in sexual intercourse with her. She told him several times to stop and “no.” She was crying. She tried to get away by scooting across the bed, but hit her head on the credenza and blacked out again. During the State’s redirect examination, the victim stated that the words “stop” and “no” may have been slurred when she spoke them, and that she was not sure how loudly she spoke them. The trial court denied defense counsel’s request to conduct recross-examination of the victim.
Hamner testified on his own behalf. According to his version of events, he returned to the victim’s room because he realized that he still had her room key from helping her into her room earlier, so he decided to return the key and check on her. After she did not answer *532 her door, he let himself in using the key. He found the victim lying on the floor. He went to pick her up, and at this point, the victim began hugging and kissing his neck. The victim then took out Hamner’s penis and began to perform oral sex on him. Hamner backed away because he did not feel it was appropriate.
Hamner testified that the victim complained of a headache so he went into the bathroom to look for some aspirin. When he returned into the main room, the victim was naked from the waist down and was taking off her bra. She asked Hamner to have sex with her. He refused, and the victim rolled onto her back and started grabbing at him again. She took down his pants and fondled him and then inserted his penis inside of her vagina. Hamner withdrew when he felt the sensation of ejaculation coming on. Hamner stated that the victim was intoxicated, but “she was fine.” She was not crying and did not want Hamner to leave the room. He adjusted the air conditioning in the room and adjusted the blanket over her before he left the room. The victim reported the incident to hotel personnel later that night, and the police were called to the hotel.
942 So.2d at 435.
In his motion for postconviction relief, the defendant argues that his trial counsel was ineffective in several respects, only one of which deserves mention here. The defendant contends that his counsel neglected to timely subpoena the records custodian of the complainant’s medical records, and neglected to depose, question, and subpoena the doctor and nurse who treated the complainant in the emergency room. According to the defendant, the medical records and related testimony would have impeached the complainant’s trial testimony that she was in pain that evening between her legs and in her vaginal area. The records also would have shown that the complainant had no bruises or abrasions between her thighs; was not treated for alcohol overdose or poisoning; and was bizarrely screaming out in the emergency room, “I’m 16 going on 17. I keep seeing his face.” (The complainant was twenty-seven years old at the time and had been sexually assaulted as a teen.) The defendant argues that this evidence would have supported his consent defense and shown that the complainant’s memory and perception of the events were significantly distorted that evening. Had the evidence come in, he argues, a reasonable probability exists that the outcome below would have been different.
Trial counsel testified below that his decision not to pursue this investigation was strategic, which the lower court accepted. As the court found, “[Trial counsel] acknowledged that there was some risk to introducing the [medical] records in that the victim’s confusion in the emergency room may have furthered the State’s argument that she was either too incapacitated and/or incoherent to consent to sexual intercourse and/or perform the sexual gymnastics as suggested by the defendant.” Trial counsel instead cross-examined the State’s witnesses, including the complainant, regarding her mental health history, marital and divorce history, and the events of the day in question.
Because both prongs of the Strickland test present mixed questions of law and fact, an appellate court employs a mixed standard of review, deferring to the circuit court’s factual findings that are supported by competent, substantial evidence, but reviewing the circuit court’s legal conclusions de novo. Bates v. State, 3 So.3d 1091, 1100 (Fla.2009).
We recognize that trial counsel’s strategic decision not to fully investigate and *533 present the medical evidence and witnesses had the potential of being deficient. See Jones v. State, 934 So.2d 488 (Fla. 3d DCA 2004) (ineffectiveness for failure to call witnesses to support consent defense); Holsomback v. White, 133 F.3d 1382, 1387-88 (11th Cir.1998) (counsel’s decision to not present medical evidence and instead rely on lack of evidence in sex abuse case was not reasonable); Pavel v. Hollins, 261 F.3d 210, 224 (2d Cir.2001) (“When a sex abuse case boils down to such a ‘credibility contest,’ physical evidence will often be important.”).
However, it is not necessary to decide if counsel’s performance was deficient, because even if it was, no reasonable probability exists that such performance ultimately prejudiced the defendant. The defendant’s incredible testimony was his downfall. As the trial court found in its order denying the defendant’s postconviction motion, “[The defendant] acknowledged that it was inappropriate to pursue her sexual advances in light of the circumstances and was unable to provide any explanation as to why he remained in her room or why he ultimately had sexual intercourse with her.” The trial court also noted that, “within twenty-four (24) hours of the alleged rape, the defendant gave four statements outing (sic) four different versions of the events to law enforcement and a fifth version when he testified at trial.” According to the prosecutor, who testified at the evidentiary hearing below, the jurors laughed upon hearing the defendant’s testimony.
The evidence which the defendant says his trial counsel should have offered at the trial would not have altered the tale he presented to the jury. At most, the unad-mitted, evidence would have shown that the victim was violated without physical force, just as the State charged. The defendant’s argument that the evidence also would have shown the victim’s lack of credibility is unconvincing by comparison.
In making these findings, we have considered the United States Supreme Court’s test for prejudice. “An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.” Strickland, 466 U.S. at 691, 104 S.Ct. at 2066. “[T]he defendant must show that [the errors] actually had an adverse effect on the defense.” 466 U.S. at 693, 104 S.Ct. at 2067. “It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.” Id. “The defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” 466 U.S. at 694, 104 S.Ct. at 2068. “[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.” 466 U.S. at 696, 104 S.Ct. at 2069.
In this case, the defendant did not meet that burden. Given the unbelievability of the defendant’s version of events, there is no reasonable probability that the omitted evidence would have changed the conclusion that the defendant committed a sexual battery.
The trial court found that the defendant’s remaining ineffectiveness claims were meritless without holding an eviden- *534 tiary hearing. Without further comment, we agree.

Affirmed.

POLEN and FARMER, JJ., concur.

. The State appealed the trial court's downward departure sentence, while the defendant cross-appealed certain trial rulings.