[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 25, 2011
JOHN LEY
CLERK

No. 10-15838
Non-Argument Calendar

_____

D.C. Docket No. 9:10-cv-80756-KLR

JOHN DEAN HAMNER,

Petitioner-Appellant,

versus

DEPUTY SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,
Richard D. Davison,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 25, 2011)

Before HULL, WILSON and BLACK, Circuit Judges.

PER CURIAM:

John Dean Hamner appeals the denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. Hamner was convicted of sexual battery, served his thirty-month sentence and is now on probation. After review, we affirm.

## I. BACKGROUND

### A. State Court Conviction

In 2003, Hamner was in West Palm Beach, Florida for a company sales event. That evening, Hamner and coworkers, including the victim, went out for dinner. During the car ride back to the hotel, the victim, who had been drinking, said she felt dizzy and slumped over. Hamner and the victim's boss, Mr. Mosby, helped the victim to her hotel room and left her in her bed, fully clothed. Shortly thereafter, Hamner returned alone to the victim's room. Hamner's and the victim's accounts of what happened next differ.

According to Hamner, he merely wanted to return the victim's hotel key and check on her. When Hamner entered the room, the victim seemed fine and made repeated sexual advances. She asked Hamner to have sex with her and begged him not to leave. Hamner eventually had sex with her.

The victim, on the other hand, said that she awoke to find she was naked and Hamner was on top of her. She told Hamner "no" and "stop" and tried to get away, before hitting her head and blacking out.

2

After Hamner left, the victim called her mother and said she was raped. The victim's mother called the hotel's front desk and asked the hotel manager to check on her daughter. Using an emergency key, the hotel manager entered the victim's room and found her naked and crying hysterically. The hotel manager called 911 and stayed with the victim until the police arrived. Both the hotel manager and the first responding police officer reported that the victim was intoxicated, slurring her words and going in and out of consciousness.

## B. Direct State Appeal

Following a 2005 trial in a Florida state court, Hamner was convicted of sexual battery without physical violence, in violation of Florida Statute § 794.011(5). Hamner was sentenced to thirty months' imprisonment followed by three years of sex offender probation.[1]

Hamner appealed his conviction and sentence. Among other things, Hamner challenged the state court's denial of his request to recross-examine the victim. The Florida Court of Appeals affirmed. See State v. Hamner, 942 So. 2d 433 (Fla. Dist. Ct. App. 2006). The state appellate court concluded (1) that the trial court did not err in denying Hamner an opportunity to conduct recross-

---

[1]Because Hamner remains subject to the terms and conditions of his sex offender probation, he is "in custody" under 28 U.S.C. § 2254(a). See Jones v. Cunningham, 371 U.S. 236, 242-43, 83 S. Ct. 373, 376-77 (1963).

examination and, (2) that, even assuming arguendo error occurred, any error was harmless given multiple witnesses testified the victim was slurring her speech that night. Id. at 436-37. The Florida Supreme Court denied Hamner's petition for discretionary review.

## C.    Motion for Post-Conviction Relief

Hamner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, alleging that his trial counsel was ineffective and he was denied a fair trial due to cumulative error. The state habeas court denied most of Hamner's claims without a hearing. However, the state habeas court held an evidentiary hearing on whether Hamner's trial counsel was ineffective in failing to present medical evidence about the victim's mental and physical condition and reserved ruling on the cumulative error claim.

At the hearing, Hamner submitted the victim's hospital records and called the nurse at the hospital when the victim was admitted. The records and the nurse's testimony indicated that at the hospital the victim was agitated and screaming that she did not want anyone to touch her, that she was 16 and just about to turn 17 (although she was actually 27) and that she kept "seeing his

4

face."[2]  At the hearing, Hamner's trial counsel and the state prosecutor testified, among other things, that presenting evidence of the victim's mental state could have undermined Hamner's defense that the victim was lucid and able to consent during the sexual encounter.  Hamner's trial counsel was concerned that if he relied too heavily on this evidence, the State might amend the information from a second degree felony to a first degree felony.

The state prosecutor stated that, although the evidence of the victim's mental state would have helped the state's case, she did not introduce it because she did not think she needed it.  The state prosecutor stressed that Hamner's testimony as to what happened did not match the four different versions of events he offered during the investigation or the other evidence.  Specifically, time-stamped data from the hotel's electronic door locks established that 26 minutes after Hamner and Mosby left the victim in her room, the hotel manager and the first responding officer found the victim incoherent, slurring her words and going in and out of consciousness.  Yet, Hamner testified that the victim was lucid and actively soliciting sex from him when he reentered her room thirteen minutes

---

[2]The victim was raped when she was a teenager.  Hamner suggests the victim may have been experiencing a "flashback" to that earlier incident at the hospital.

earlier. The state prosecutor recalled jurors laughing at Hamner during her cross-examination, and described Hamner's testimony as "totally unbelievable."

The state habeas court concluded that: (1) Hamner did not meet "the Strickland standard for ineffective assistance of counsel"; and (2) since "the individual errors [were] without merit, the contention of cumulative error [was] similarly without merit." On appeal, the Florida District Court of Appeals affirmed. See Hamner v. State, 13 So. 3d 529 (Fla. Dist. Ct. App. 2009). Addressing Hamner's claim as to the omitted evidence of the victim's medical condition, the state appellate court concluded that, even if trial counsel's performance was deficient, "no reasonable probability exists that such performance ultimately prejudiced the defendant." Id. at 533. The state court explained that Hamner's own incredible testimony as to what happened "was his downfall" and the omitted evidence would not have changed the jury's verdict. Id. The Florida Supreme Court denied discretionary review.

**D.    Section 2254 Petition**

Hamner filed this counseled § 2254 petition alleging ineffective assistance of trial counsel, denial of his Sixth Amendment right to fully cross-examine the victim and a denial of due process based on cumulative error. As to the ineffective assistance claims, Hamner alleged that his trial counsel: (1) failed to present

6

evidence relating to the victim's medical condition at the hospital; (2) failed to object to hearsay testimony from the victim's mother, the hotel manager and the responding police officer as to statements the victim made shortly after the incident; (3) failed to depose some state witnesses and to attend the deposition of one of Hamner's own witnesses and, thus, to prepare an effective examination or cross examination of these witnesses; and (4) failed to object to the district court's jury instructions as to involuntary intoxication.

The district court denied Hamner's § 2254 petition. Hamner filed a motion for a certificate of appealability ("COA") on his ineffective assistance claims, his Sixth Amendment Confrontation Clause claim, the cumulative error-due process claim and on whether the district court should have held an evidentiary hearing. The district court granted Hamner's motion for a COA.[3]

## II. DISCUSSION

---

[3]The district court's order failed to specify which issues satisfied the requirements of 28 U.S.C. § 2253(c)(2). We conclude sua sponte that the issues for which Hamner sought certification merit a COA. See Putman v. Head, 268 F.3d 1223, 1228 (11th Cir. 2001) (explaining that this Court is not deprived of jurisdiction if the district court fails to identify issues for appellate review and that we may determine sua sponte which issues warrant a COA).

However, we do not address Hamner's claim on appeal that the evidence was insufficient to support his conviction because this claim was not alleged in Hamner's § 2254 petition. Further, Hamner did not seek certification of this issue in his counseled motion for a COA or request in his counseled appeal brief that this Court expand the COA to include this issue.

7

In considering a district court's denial of a § 2254 habeas petition, we review findings of fact for clear error and legal determinations de novo. Rhode v. Hall, 582 F.3d 1273, 1279 (11th Cir. 2009), cert. denied, 130 S. Ct. 3399 (2010). Like the district court, we are also reviewing the state habeas court's decision. See Putman, 268 F.3d at 1240. Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court may not grant habeas relief on a state prisoner's claim that was denied on the merits in state court unless the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[4]

A.    **Ineffective Assistance of Trial Counsel**

To prevail on a claim of ineffective assistance, the petitioner must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct.

---

[4]Hamner's appeal brief does not acknowledge AEDPA's deference requirements. Instead, Hamner's brief argues the merits of his claims.

2052, 2064 (1984). A court need not address both prongs of the inquiry if the petitioner makes an insufficient showing on one. Id. at 697, 104 S. Ct. at 2069.

To show deficient performance, the petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. Id. at 687-88, 104 S. Ct. at 2064. Strickland's performance prong requires deferential review, and the court, in assessing the reasonableness of counsel's performance, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Reed v. Sec'y, Fla. Dep't of Corrs., 593 F.3d 1217, 1240 (11th Cir.), cert. denied, 131 S. Ct. 177 (2010) (quotation marks omitted).

With respect to the prejudice prong, the court asks whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. To establish prejudice, the petitioner has the burden to show more than that the error had "some conceivable effect on the outcome of the proceeding," Marquard v. Sec'y Dep't of Corrs., 429 F.3d 1278, 1305 (11th Cir. 2005) (quotation marks omitted), and may not rest on "bare allegations of deficient performance." Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993).

Our standard of review is "doubly deferential" when "a <u>Strickland</u> claim [is] evaluated under the § 2254(d)(1) standard." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, ___ , 129 S. Ct. 1411, 1420 (2009). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." <u>Id.</u> (quotation marks omitted).

Here, Hamner has not shown that the state court's denial of his ineffective assistance claims was contrary to, or an unreasonable application of, <u>Strickland</u> or an unreasonable determination of the facts. First, as to the failure to object to hearsay testimony, the state court found that these statements would have been admitted as excited utterances. <u>See</u> Fla. Stat. § 90.803(2) (providing that excited utterances are not inadmissible hearsay evidence). As such, the state court reasonably concluded that trial counsel could not be deemed ineffective for failing to raise a futile hearsay objection. <u>See</u> <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit.").[5]

---

[5]Hamner's trial counsel raised a hearsay objection to the testimony of the victim's mother as to statements the victim made shortly after the incident. The state trial court overruled the objection and admitted the out-of-court statements as excited utterances. The state habeas court found that the testimony of the other two witnesses, which recounted statements made by the victim "a few brief moments after the victim spoke to her mother," would also have fallen under the excited utterance exception.

10

Second, as to the failure to depose witnesses, the state court denied this claim because Hamner either failed to allege the substance of the witnesses's potential testimony or, if he did, failed to show how the omission of that testimony prejudiced Hamner at trial.[6] The state court's conclusion that Hamner failed to show prejudice was not contrary to, or an unreasonable application of, Strickland. Strickland places upon the petitioner the burden to establish prejudice except in the few cases, not applicable here, in which prejudice is presumed. See 466 U.S. at 693, 104 S. Ct. at 2067.

Similarly, as to the involuntary intoxication jury instruction claim, the state court concluded that Hamner failed to explain how the instruction prejudiced his defense. Hamner argues that there was no evidence of involuntary intoxication and that, by giving this instruction, the state trial court nullified his consent

---

[6]Hamner alleged that Officer Jay Donde testified at his deposition that the victim knew which room Hamner was staying in and, after the sexual encounter, contacted the front desk multiple times in an effort to call him. The state court found that Hamner did not show how Officer Donde's testimony would have created reasonable doubt in the minds of the jury. The district court noted that Officer Donde's potential testimony was cumulative of the testimony of two other hotel employees that the victim had done this.

Hamner alleged that another witness, Lloyd Walker, who attended dinner with Hamner and the victim, would have testified that the victim behaved oddly, drank Jack Daniels with no ice, talked about her boyfriend and told people that everyone there was her boyfriend. The state court found that Lloyd Walker's testimony merely corroborated the victim's own testimony that at dinner she drank Jack Daniels and talked about her boyfriend.

11

defense. Hamner's bare allegation does not satisfy his burden to show that trial counsel's failure to object to the instruction caused him prejudice.[7]

The instruction, which told the jury it could consider "[e]vidence of the victim's mental incapacity . . . , <u>if any</u>," did not misstate the law and did not suggest that such evidence existed.[8] (emphasis added.) The victim's own testimony, which the jury obviously credited, indicated she voluntarily drank alcohol at dinner and became intoxicated. Moreover, during closing, Hamner's counsel argued that the involuntary intoxication instruction the trial court was about to give did not apply because there was no evidence of involuntary consumption of alcohol or drugs and stressed that the victim voluntarily consumed

---

[7]The state habeas court denied this claim because Hamner failed to describe with any particularity how the instruction prejudiced his defense. Although under Florida law it is generally error to give a jury instruction that is not supported by the record, it is not <u>per se</u> reversible error. Instead, it is reversible error only if it is "capable of misleading the jury in such a way as to prejudice the defendant's right to a fair trial." <u>Lewis v. State</u>, 693 So. 2d 1055, 1057 (Fla. Dist. Ct. App. 1997). Thus, the mere fact that Hamner's trial counsel failed to object to the instruction does not demonstrate prejudice. Moreover, the victim admitted she voluntarily consumed alcohol, and we see no prejudice from this instruction.

[8]The jury instruction stated:
Evidence of the victim's mental incapacity or defect, if any, may be considered in determining whether there was an intelligent, knowing, and voluntary consent.
Mentally incapacitated means that a person is rendered temporarily incapable of appraising or controlling his or her conduct due to the influence of a narcotic, an[a]esthetic or intoxicating substance administered to that person without his or her consent, or due to any other act committed upon that person without his or her consent.

12

alcohol. Hamner points to nothing in the record to suggest that the jury disregarded the "if any" language of the instruction and presumed the victim was involuntarily intoxicated at the time of the offense. Therefore, the state court's ruling on this claim was not contrary to, or an unreasonable application of, Strickland.

As for Hamner's claim regarding the omitted evidence of the victim's mental condition at the hospital, the state habeas court concluded that Hamner failed to show prejudice. Specifically, in light of "the unbelievability of the defendant's version of events," the state habeas court concluded that the omitted evidence would not have changed the jury's verdict. Hamner, 13 So. 3d at 533.

Notably, Hamner's trial counsel was able to elicit information from witnesses about the victim's mental health issues and her prior rape. The defense's theory of the case, however, did not rely heavily upon these facts. Instead, the defense argued that the victim intentionally fabricated the rape story because she feared she would lose her job. Evidence that, at the hospital, the victim appeared delusional and possibly was having a flashback to the earlier rape would have undermined that theory.

Moreover, the record bears out the state habeas court's assessment of Hamner's credibility. Although Hamner admitted it was inappropriate for him to

have sex with the victim under the circumstances, less than fifteen minutes after leaving her room, Hamner reentered her room alone and admitted he had sex with her. Furthermore, Hamner's story kept changing right up until trial. When questioned by the police, Hamner initially denied reentering the victim's room, later admitted entering her room, but denied having sex with the victim, and finally admitted having sex. His final version of events at trial did not match any of his prior statements given to police. At the state habeas court's evidentiary hearing, the state prosecutor testified that Hamner's testimony was so unbelievable that some jurors laughed during her cross-examination of Hamner.

Hamner's story at trial was also inconsistent with the other evidence. Hamner testified that when he entered the victim's room, she was coherent. Hamner described a sustained conversation with the victim in which she repeatedly asked him to have sex with her, told him she was on birth control pills, discussed her sexual history with him, told him she had a headache and promised him the best sex he had ever had. Hamner said that, during this conversation, the victim repeatedly made sexual advances, undressed and attempted to perform oral sex on him.

Yet, Hamner's description of the victim did not match the woman the hotel manager and the police officer found on the floor of the hotel room less than

14

fifteen minutes later. At that time, the victim was intoxicated, barely able to stand up or communicate, and was slurring her words and slipping in and out of consciousness.

On this record, we cannot say the state habeas court's conclusion that Hamner failed to show prejudice was contrary to, or an unreasonable application of, Strickland or was an unreasonable determination of the facts.

**B.     Sixth Amendment Right of Confrontation**

Under the Sixth Amendment's Confrontation Clause, defendants have the right to cross-examine the government's witnesses. Delaware v. Van Arsdall, 475 U.S. 673, 678, 106 S. Ct. 1431, 1435 (1986). However, this right is not without limitation, as the defendant is entitled to only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20, 106 S. Ct. 292, 294 (1985).

Accordingly, the state trial court has "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Van Arsdall, 475 U.S. at 679, 106 S. Ct. at 1435. To

establish a Confrontation Clause violation, the defendant must show that he was "prohibited from engaging in otherwise appropriate cross-examination" and "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [the defendant's] counsel been permitted to pursue his proposed line of cross-examination." Id. at 680, 106 S. Ct. at 1436.

Here, the state appellate court's decision on the Confrontation Clause issue was not contrary to, or an unreasonable application of, Van Arsdall. On cross-examination, Hamner was able to question the victim about her claim that she had said no, specifically focusing on how loud the victim claimed she had spoken. This information was important to the defense because the victim's supervisor, Mosby, was in the room next door and testified that he heard no noise from her room. On redirect, the state prosecutor explored further the manner in which the victim said no, and asked if she spoke clearly. The victim admitted that she did not know how loudly she had spoken and that her words "might have been slurred." The state trial court refused Hamner's request for recross-examination.

The alleged Sixth Amendment violation relates only to Hamner's desire to question the victim further about the clarity of her diction when she said no. Given that the victim herself acknowledged she had been drinking and might have

16

slurred her words, we do not see how further exploration of this admission would have given a reasonable jury a significantly different impression of her credibility.

Hamner's testimony was that the victim never said no at all and in fact repeatedly and coherently asked him to have sex with her. Thus, further questioning on this point arguably would been detrimental to Hamner's defense given that it could have undermined his own credibility and supported the prosecution's theory that the victim was in no condition to knowingly consent and that Hamner took advantage of her. Under the facts and circumstances of this case, the state court reasonably concluded that the trial court's refusal to let Hamner recross-examine the victim on this particular point did not rise to the level of a Sixth Amendment violation.[9]

## III.  CONCLUSION

For all these reasons, we affirm the district court's denial of Hamner's § 2254 petition.

**AFFIRMED.**

---

[9]Given that Hamner did not request a hearing, or allege any facts that, if proven, would have indicated that the state court acted contrary to, or unreasonably applied, federal law, the district court did not abuse its discretion in denying Hamner's petition without holding a hearing.