DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LUCIEN D. DORT,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-1929

[ August 26, 2015 ]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; James W. Midelis, Judge; L.T. Case No. 312010CF001720C.

Carey Haughwout, Public Defender, and Alan T. Lipson, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Monique Rolla, Assistant Attorney General, West Palm Beach, for appellee.

TAYLOR, J.

Lucien Dort was charged by indictment with murder in the first degree with a firearm and conspiracy to commit murder. A jury found him guilty as charged on both counts. He appeals his convictions, raising two grounds for reversal: (1) exclusion of a co-defendant's statement to the prosecutor concerning events surrounding the murder, and (2) admission of testimony regarding appellant's ownership of a gun. We affirm as to both issues, but write to address exclusion of the co-defendant's statements. We find no abuse of discretion in the trial court's ruling that these statements were not admissible under the statement-against-interest hearsay exception.

Appellant was charged with first degree murder and conspiracy to commit murder, along with co-defendants Daniel Duffy, Marciano Dort, and Brian Smith. Duffy was involved in a real estate investment business. His father-in-law and "right hand man," John Torres, was the murder victim. Torres assisted Duffy with miscellaneous personal and business tasks. They had a good relationship until the federal government investigated Duffy for mortgage fraud and Torres provided information on

Duffy's business to federal investigators. Ultimately, Duffy and his wife, Nicole Torres, were arrested.

Co-defendant Marciano Dort is appellant's brother. Marciano and his girlfriend, Megan Young, were friends with Nicole. When Duffy and Nicole were released on bail, Megan and Marciano started living at Duffy's house. Marciano then began assisting Duffy in his business dealings.

Co-defendant Brian Smith met Duffy through his relationship with Marciano and appellant. A few weeks before the murder, Smith and appellant drove over to Duffy's house to meet with Marciano and Duffy. Megan and Nicole were at the house during the meeting, but they did not hear what was discussed.

Smith testified for the state at appellant's trial. He said that during the meeting at Duffy's house, Duffy complained about his father-in-law. Duffy said that Torres was a "pain in his ass" and that "he needed to get rid of him, get him out of the way because he was testifying on him and his wife . . . ." Duffy accused Torres of stealing his papers, his guns, and over $300,000. He said he was willing to pay any amount to get Torres killed. Duffy also told them that if they recovered the money that Torres had stolen, they could get a portion of it. Marciano agreed to "take care of" Torres for Duffy.

Sometime after their meeting, Marciano, appellant, and Smith went together to purchase a gun. Once they had the gun, they went to appellant's apartment, where appellant placed the gun on top of a cupboard in the kitchen. Before the murder, the three men made several trips to Torres's apartment complex, but Torres was never at home. Appellant was always the driver.

On the day of the murder, Marciano came over to appellant's house, where Smith was staying, and appellant drove Marciano's car to Torres's house. Marciano complained that Duffy had been badgering him about killing Torres. Appellant suggested that they kill Torres and anyone who was with him, as long as they got the job done. Marciano said that Smith should be the shooter, because Torres did not know him.

When they arrived at the apartment complex, they saw Torres driving into the parking lot. Torres and his girlfriend, Miranda Artz, were returning home after a day of shopping. Appellant parked and waited for Torres to park. As Smith approached Torres, he saw Ms. Artz get out of the car and walk towards their apartment. Smith fired the gun twice at Torres. Torres ran away and Smith chased him.

Smith shot again. Torres ran back towards Smith and they struggled. Smith pushed Torres away, shot him, and then ran back to the waiting car.

Ms. Artz saw Smith chase Torres and shoot him. She never saw appellant during the shooting. She called the police.

After Smith returned to the car, appellant drove them out of the apartment complex. They drove around the neighborhood and disposed of the gun in a wooded area. Appellant told Smith that he wanted to keep the magazine clip because appellant had the same caliber gun.

A police sergeant on patrol heard the gunshots. He drove in the direction of the gunshots and was informed by radio dispatch that there had been a shooting in a nearby apartment complex. The dispatch described the suspect vehicle as a newer model four-door grey Dodge Charger with three occupants.

As the sergeant got closer to the apartment complex, a dark-grey Charger with three occupants passed him. The sergeant and two other deputies initiated a traffic stop on the vehicle. He identified appellant as the driver of the vehicle. Marciano was in the passenger seat and Smith was in the backseat of the car.

A detective who assisted in the arrest received consent from appellant to search the car. He discovered an empty magazine clip from a .380 caliber gun on the backseat of the car. Two days after the shooting, police found a .380 caliber handgun without a magazine clip in a vacant lot near the entrance of the apartment complex. A firearms examiner testified that the bullets removed from the victim were fired from the .380 caliber gun found in the nearby lot.

Before trial, appellant filed a motion in limine to allow admission of a statement given by co-defendant Marciano to prosecutors after his arrest. Appellant sought to introduce the statement as an exception to the hearsay rule for statements against a declarant's penal interest, under section 90.804(2)(c), Florida Statutes. Marciano was expected to exercise his Fifth Amendment right against self-incrimination and refuse to testify in appellant's trial.

The record on appeal does not contain the entire proffer. Appellant presented the following statements from his motion in limine, in which he summarized Marciano's statements:

a. Referring to meeting with Brian Smith, Marciano Dort, and Daniel Duffy at Duffy's house, Lucien was there, but he was basically flirting with the girls: Megan and Nikki.
b. Lucien was basically doing the driving I didn't have a license and Brian Smith had a warrant out for his arrest.
c. I asked Lucien to drive Brian around a couple of times and he did.
d. I didn't tell Lucien about none of this.
e. Brian knew some stripper where John Torres lived and Lucien thought they were goin (sic) there to visit the girls but I (sic) reality Brian was going there to do the job. Brian made up stories to my brother about why they were there (selling pills).
f. On day of murder: Waited in the back for 15 minutes then went to the front and my brother wasn't feeling well, he had taken some Benadryl for his nose, and wanted to leave. Brian said to wait a bit more.
g. We didn't hear the shots because we were parked a few buildings down and we was playing music in the car and the windows were rolled up.
h. Brian never admitted he shot John Torres when he got back in the car he hopped back in the car and said lets go.
i. Marciano did not even know Brian was going to shoot him that day, we just went down there to check things out.

After reviewing defense counsel's proffer, the trial court determined that Marciano's statements to the prosecutors about events leading up to and during the murder were not sufficiently self-incriminating to qualify as statements against interest. Further, the court found that there were no corroborating circumstances indicating their trustworthiness. The court therefore denied appellant's motion to admit the statements into evidence.

"The standard of review for admissibility of evidence is abuse of discretion, limited by the rules of evidence." *Alvarez v. State*, 147 So. 3d 537, 542 (Fla. 4th DCA 2014). Under Florida's rules of evidence, hearsay statements are generally inadmissible unless they fall within an exception to the hearsay rule. Section 90.804(2)(c), Florida Statutes (2009), provides an exception to the hearsay rule for a statement against interest. This section states:

> (c) *Statement against interest.*—A statement which, at the time of its making, was so far contrary to the declarant's pecuniary or proprietary interest or tended to subject the declarant to liability or to render invalid a claim by the declarant against

4

another, so that a person in the declarant's position would not have made the statement unless he or she believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of the statement.

Essentially, the test for admissibility of statements against interest under section 90.804(2)(c) is whether (1) the declarant is unavailable, (2) the statements are relevant, (3) the statements tend to inculpate the declarant and exculpate the defendant, and (4) the statements are corroborated. *Voorhees v. State*, 699 So. 2d 602, 613 (Fla. 1997).

Here, the parties do not dispute that Marciano was unavailable. A declarant is unavailable to testify if the declarant asserts his or her Fifth Amendment right against self-incrimination. *Roussonicolos v. State*, 59 So. 3d 238, 240 (Fla. 4th DCA 2011).

Also, it is undisputed that the statements are relevant. Evidence is relevant if it tends to prove or disprove a material fact. § 90.401, Fla. Stat. (2009). Marciano's statements are relevant because they would tend to prove the defense theory that appellant had no knowledge of the conspiracy or the murder.

The state, however, argues that the requirements for self-inculpatory statements and corroboration were not met. According to the state, while the statements tended to exculpate appellant, they were not inculpatory as to Marciano [the declarant]. The state contends that Marciano never inculpated himself; instead, his statements implied that neither he nor his brother knew a murder was going to take place. To illustrate this, the state points to portions of his statement such as, "*we* didn't hear the shots because *we* were parked a few buildings away," "Marciano [the declarant] did not even know Brian was going to shoot him that day, *we just went down there to check things out*," and "Brian never admitted he shot John Torres."

Whether the hearsay exception for a statement against penal interest applies depends on the content of the incriminating declaration. *Smith v. State*, 746 So. 2d 1162, 1168 (Fla. 1st DCA 1999). "Section 90.804(2)(c) uses the term 'statement' in a narrow sense to refer to a specific declaration or remark incriminating the speaker and not more broadly to refer to the entire narrative portion of the speaker's confession." *Id.* "An attempt to minimize criminal liability removes the sole justification for allowing the declarant's statement in evidence. Likewise, a statement against penal interest may not be truly self-inculpatory if the declarant

5

has implicated a third party in the process of making his own admission." *Id.* Moreover, "an attempt to shift the blame to another, even in part, undermines the very foundation of the exception." *Id.*

The state argues that Marciano's statements did not specifically implicate himself as an accomplice, but mainly denied any knowledge and shifted the blame to a third party, Brian Smith. As such, his statements did not qualify as a statement against interest. *See Perez v. State*, 980 So. 2d 1126, 1133 (Fla. 3d DCA 2008) (concluding that the portion of a statement by defendant's accomplice, in which accomplice indicated that a third party had been involved in the robbery, was not admissible under hearsay exception for statements against penal interest, as the statement implicating the third party was not inculpatory as to the accomplice/declarant).

Appellant counters that, although Marciano's statement was partially self-exculpatory, at least a portion of his statement should have been admitted because it tended to inculpate Marciano and exculpate appellant. *See Masaka v. State*, 4 So. 3d 1274, 1282 (Fla. 2d DCA 2009) (stating that the trial court should have considered each proffered statement, rather than the entire interview as a whole, in determining whether the evidence proffered by the defendant was admissible). Appellant explains that Marciano's statement that "I did not tell [appellant] about none of this" was self-inculpatory because it suggested that Marciano knew about the plans to murder the victim. Statements that are not facially incriminating or do not constitute a confession to a crime may nonetheless be sufficiently self-inculpatory to be admitted as a statement against interest. *Id.* at 1280. To determine whether the statement is self-inculpatory, however, it must be viewed in context. *Id.* Here, Marciano's statement that "I did not tell [appellant] about none of this" would tend to inculpate Marciano if, when viewed in context, it indicated that Marciano knew about the murder scheme and conspired with the other co-defendants. However, based on the summary of the statements submitted in the record, we are unable to find error in the trial court's conclusion that Marciano's statement to prosecutors was not sufficiently self-inculpatory for admission.

Further, appellant failed to meet the requirement that Marciano's statements be sufficiently corroborated to demonstrate "particularized guarantees of trustworthiness." *See Machado v. State*, 787 So. 2d 112, 113 (Fla. 4th DCA 2001). "A non-testifying accomplice's statement against penal interest is admissible as a hearsay exception if corroborating circumstances show the statement has 'particularized guarantees of trustworthiness.'" *Id.* (quoting *Lilly v. Virginia*, 527 U.S. 116, 136-37 (1999), and citing § 90.804(2)(c), Fla. Stat.). "When determining whether the statement contains 'particularized guarantees of trustworthiness,'

courts should look to the surrounding circumstances, including the language used by the accomplice and the setting in which the statements were made." *Machado*, 787 So. 2d at 113 (citing *Lilly*, 527 U.S. at 139). For example, "a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest . . . ." *Williamson v. United States*, 512 U.S. 594, 601 (1994) (citations omitted) (holding that portions of an accomplice's confession, where he attempted to shift blame to the defendant and decrease his exposure to criminal liability, were not statements against interest).

Here, the trial court noted that Marciano made the statements to prosecutors after he had already been charged; it determined that Marciano was motivated by a desire to make a deal with the prosecutor. Overall, the statement appeared to be an attempt to minimize his and his brother's involvement. The court concluded that the circumstances were such as to render the statements unreliable and untrustworthy.

Another factor the trial court must consider in determining the trustworthiness of the statements is whether the statements are consistent with the other evidence in the case. *See Masaka*, 4 So. 3d at 1282-83.

In response to the trial court's inquiry whether Marciano's statements were consistent with the other evidence, the state informed the court that co-defendant Brian Smith, who had previously testified in Duffy's trial, would testify that appellant was aware of the murder plot and actively took part in it. He would testify that appellant met with the co-defendants at Duffy's house to discuss the murder, went along with them to purchase a gun, drove them to the victim's apartment complex several times to stake it out, and discussed plans on how to carry out the murder. During the discussion about the murder, appellant even suggested that it might be necessary to kill everyone at the scene.

After reviewing the proffered statement, the relevant law, and the parties' arguments, the trial court denied the motion to admit Marciano's statement. We find no abuse of discretion in the trial court's exclusion of Marciano's statement under section 90.804(2)(c), Florida Statutes, and affirm appellant's judgments of conviction and sentences.

*Affirmed.*

MAY and DAMOORGIAN, JJ., concur.

*       *       *

*Not final until disposition of timely filed motion for rehearing.*