CORRECTED OPINION
MAY, J.
The defendant appeals his conviction for trafficking 200 to 400 grams of cocaine, possession of less than twenty grams of marijuana, and possession of paraphernalia (use). He argues the trial court erred in excluding the co-defendant’s statement, failing to sever the trial of his codefendant, and instracting the jury on willful blindness. We agree that the trial court erred in these three decisions. We reverse and remand for a new trial.
The State charged the defendant with: (1) trafficking in cocaine, 200 to 400 grams; (2) possession of oxycodone; (3) possession of schedule IV substance, Clonazepam; (4) possession of marijuana, less than twenty grams; (5) possession of paraphernalia (production); and' (6) possession of paraphernalia (use). The case proceeded to a jury trial where the following evidence relevant to the issues on appeal was introduced.
A DEA agent testified he was conducting surveillance on a target’s residence. The subject of the surveillance and his girlfriend lived at the location. Earlier that morning, they were being observed at a probation office.
Later that morning, the agent observed the defendant and co-defendant drive by in a pick-up track at a high rate of speed and arrive at the target’s residence. A deputy watched the defendant and co-defendant go into the residence. Soon after, they exited the residence with the co-defendant carrying a black and red backpack. They got back into the truck and left. The deputy followed them.
When the truck turned into a storage facility, the deputy was unable to follow, so he advised two other agents that the truck had committed traffic and equipment violations. The track stopped in front of two storage units that the agents had been watching.
One of the agents approached the truck, and walked toward the driver’s side. The defendant was standing outside near the back of the truck. The agent observed the defendant drop something and move toward the ground. He ordered the defendant to get on the ground and took him into custody.
Another agent approached the co-defendant passenger. He then saw the co-defendant turn his body away from him and put his hand into his pocket. He asked the co-defendant to show his hands, saw him pull a cell phone out of his pocket, and then placed him in handcuffs.
The agent smelled marijuana, looked in the track, and saw a black and red backpack that was partially open with the top of a plastic bag poking out of it. Both agents saw a crack pipe, a black kitchen plate, a bag of marijuana, and an open container of alcohol in the track. The defendant and co-defendant were read their Miranda rights.
The agent removed the backpack from the floor of the passenger side of the truck and found a bag containing around 237.96 grams of cocaine in the first zippered pocket. In another zippered pocket, he found a cigar box that contained $6,713 in cash. The box also contained prescription medication patches for Suboxone, loose marijuana, a “white rocklike substance,” and multiple pills.
The backpack also contained the defendant’s business cards along with other legal documents that contained his name. A digital scale with white residue on it, un *551 used sandwich bags, a plastic container with rubber bands, a green notebook, and a photograph of the defendant with other adults and children in it were also found in the backpack.
• A senior forensic scientist confirmed the various drugs found and their amounts. •No DNA or .fingerprint testing was performed on the cocaine packaging. A duffel bag belonging to the target was found in the truck. '
The storage units were searched and household items, a stolen vehicle, and some other drug paraphernalia were recovered. Neither storage unit was registered in the defendant’s name. No one weighed the cocaine at the scene, but the DEA agent estimated the amount based on his observation. He testified that he may have said something to the defendant and/or co-defendant about its weight.
The defendant and co-defendant were placed in the back of a police vehicle driven by a transport officer. A taped video conversation made in the transport vehicle was introduced into evidence over objection. The following exchange took place in the transport vehicle.
Defendant: Right. We didn’t do anything wrong. We will be alright.
Defendant: He told you what they found in the bag, right?
Co-Defendant: No.
Defendant: How much....
Co-Defendant: No, they didn’t tell me anything_
Defendant: 200 something ... pieces of coke.
Co-Defendant: Are you serious?
Defendant: A ... quarter key of....
Co-Defendant: Holy s-t.
Defendant: They want somebody to take a ... hit for it ... It ain’t my s-t_I was told to move s-t, that’s it.
Co-Defendant: 200 ... grams?
Defendant: Something like that.
Co-Defendant: [WJe’re ... and it’s in your truck.
Defendant: It’s in my truck, yeah.
The co-defendant stated that while the police kept pressing him to tell the truth, he could not answer them because he did not know anything.
The State also introduced jail calls of both the defendant and co-defendant. When speaking with a female, the defendant stated:
If this s-t is in my possession and you know it just happened to be in a bag that I was moving, you know and it was all legit_We got stopped at the storage unit. The storage units are full of all his s-t. You know, they know what they were looking for that day. And this just happened to be in my possession át the time because I’m moving.... I’m moving the whole ... • house. It wasn’t like I just had that bag on me and all of the sudden that was'it. You know, I just happened to be on the road. No. I’m actually at a storage' unit with the bag in my car. "
During the co-defendant’s call to his father, he stated:
I get a phone call from his girlfriend telling me to go to the house to get everything, something’s up. I go to the house. Añd I grabbed a few bags they tell me to grab. I don’t know what’s in them. Put them into the truck. We go to the storage unit. One of the storage units in my name. Make a long story short, the undercover — they go straight for me and then they find out what’s in the bag;... And then I find out what’s in the bag. And then now, I’m getting hit with all these charges.
On a call to his brother, the co-defendant explained that “they came to the house *552 looking for- everything. And I had just left the house.” The co-defendant explained that the target’s girlfriend told him that everybody was contained at the house, which was being raided. She told him to “get the rest of the bags out of the room.”
The jury found the defendant guilty of trafficking 200 to 400 grams of cocaine, possession of less than twenty grams of marijuana,' and possession of paraphernalia (use). He was found not guilty of the remaining charges. The defendant moved for a new trial and for an arrest of judgment; the trial court denied the motions. From his conviction and sentence, the defendant now appeals.

The Statement Against Interest

: During the defendant’s case, defense counsel called a deputy, to proffer a statement the eo-tdefendant made to him on the date of the arrest, which the trial court had suppressed as to the co-defendant.[1] The deputy testified that after the co-defendant was read his Miranda rights, he asked the co-defendant about the backpack. The co-defendant responded: “[Everything found in the vehicle he would take responsibility for,” which included the backpack.
The State objected to the statement’s admission, arguing it was inadmissible hearsay. Defense counsel argued that it was a statement against interest offered to exculpate the defendant and there were corroborating circumstances supporting its trustworthiness.
Defense counsel argued the co-defendant was unavailable to testify because he would invoke his Fifth Amendment privilege if called to testify. The trial court asked defense counsel if he was going to call the codefendant. Defense counsel, responded that if the trial had been severed he would have called him as a witness.
Defense counsel then reiterated the trial should have been severed because he wanted to introduce exculpatory evidence that was inculpatory for the co-defendant. The trial court found the statement was neither trustworthy nor corroborated and denied the request to admit the statement.
We review evidentiary issues for an abuse of discretion, “limited by the rules of evidence.” Dort v. State, 175 So.3d 836, 840 (Fla. 4th DCA 2015) (quoting Alvarez v. State, 147 So.3d 537, 542 (Fla. 4th DCA 2014)).
On appeal, the defendant argues the co-defendant’s suppressed statement was admissible as a statement against interest because the codefendant was unavailable to testify; and the statement: (1) was relevant to the defense; (2) incriminated the co-defendant; (3) tended to exculpate the defendant; and (4) was corroborated by other evidence.
The State responds that the defendant failed to, establish the co-defendant was unavailable because he was never called to the stand. The statement does not tend to exculpate, the defendant. The trial court correctly concluded the statement was untrustworthy. '
“Under Florida’s rules of evidence, hearsay statements are generally inadmissible unless they fall within an exception to the hearsay rule.” Dort, 175 So.3d at 840. An exception exists when a statement is a statement against interest: “A statement tending to expose the declarant to criminal liability and offered td exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of *553 the statement.” § 90.804(2)(c), Fla. Stat. (2014).
• “Essentially, the test for admissibility of statements against interest under section 90.804(2)(c) is whether (1) the declarant is unavailable, (2) the statements are relevant, (3) the statements tend to inculpate the declarant and exculpate the defendant, and (4) the statements are corroborated.” Dort, 175 So.3d at 840 (citation omitted). We now analyze the four factors.

1. Was the declarant unavailable?

A declarant is unavailable to testify if the declarant asserts his or her Fifth Amendment right against self-incrimination or the court sustains an assertion of a Fifth Amendment privilege. Henyard v. State, 992 So.2d 120, 126 n. 3 (Fla.2008) (citation omitted); Wyatt v. State, 183 So.3d 1081, 1084 (Fla. 4th DCA 2015) (citation omitted).
The State argues the defendant failed to prove the co-defendant was unavailable because he did not take the stand or invoke his Fifth Amendment privilege. The record sufficiently reflects the co-defendant’s unavailability given the trial court’s denial of, the motion to sever the trials. It was unnecessary for the defendant to go through the motions of calling the co-defendant and having him invoke his right to remain silent.[2]

2. Was the statement relevant?

It is undisputed the statement is relevant. “Relevant evidence is evidence tending to prove or disprove a material fact.” § 90.401, Fla. Stat. (2014). The co-defendant’s statement is relevant because it tended to prove the defendant was not responsible-for the contents of the backpack.

3.Did the statement tend to inculpate the co-defendant and exculpate the defendant?

The State argues the statement was not self-inculpatory because it did not specifically indicate what the co-defendant was taking responsibility for. “[WJhether a Statement is self-inculpatory ... can only be determined by' viewing it in context. Even statements that are on their face neutral may actually be against the declarant’s interest.” Masaka v. State, 4 So.3d 1274, 1280 (Fla. 2d DCA 2009) (emphasis in original) (citation omitted). “The question ... is always whether the statement was sufficiently against the declarant’s penal interest.‘that a reasonable person in the declarant’s position would not have made the statement unless believing it to be true,’ and this question can only be answered in light of all the surrounding circumstances.” Id. at 1281 (citation omitted).
In Masaka, the State charged the defendant with attempted, manslaughter and attempted robbery with a firearm after a cab driver was robbed and shot. Id. at 1277. The cab driver testified that the person who sat behind him had talked to, him during the cab ride, but exited the cab and left .when they arrived at the destination. Id. at 1278. The other passenger, who *554 said nothing, remained behind, robbed, and shot him. Id.
The defendant was taken into custody. Id. Post-Miranda, the cousin admitted that he had been silent during the cab ride, had possessed the gun, had told others he planned to rob someone, and had sold the gun. Id. Nevertheless, he maintained that the defendant was the shooter. Id.
At trial, the defendant attempted to introduce his cousin’s statements in support of his misidentification defense. Id. The State objected on hearsay grounds; the trial court refused to admit the statements. Id. The Second District held the cousin’s statements should have been admitted as a statement against interest. Id. at 1283.
Similar to Masaka, the co-defendant here made his statement to the detective post -Miranda while he knew he was being investigated for the cocaine. Given the surrounding circumstances, the co-defendant’s statement that “he would take responsibility for everything,” was self-incul-patory.
The State next argues the statement did not tend to exculpate the defendant because it did not inculpate the co-defendant. The statement was, however, self-inculpatory. “For statements against interest to satisfy this statutory requirement, they do not need to fully exonerate the defendant; instead, they must only ‘tend to exculpate’ the defendant.” Masaka, 4 So.3d at 1282 (citation omitted); see also Voorhees v. State, 699 So.2d 602 (Fla.1997) (holding statement was exculpatory of the defendant and should have been admitted, but the error was harmless).
Here, the co-defendant asserted “he would take responsibility for everything.” Like Masaka, the statement tended to inculpate the co-defendant and thereby tended to exculpate the defendant.
A Was the statement sufficiently corroborated?
Last, the defendant argues the trial court erred in finding the co-defendant’s statement was uncorroborated. We agree. The statement was consistent with the co-defendant leaving the house in possession of the backpack and keeping it on his side of the truck. It was also consistent with the co-defendant’s jail call where he related that he was told to go and get everything because something was up.
“In the context of statements made to law enforcement, the primary concern is whether the statements are unreliable because they appear to be an attempt to shift blame or curry favor.” Masaka, 4 So.3d at 1282 (citation omitted). Here, the co-defendant’s statement was neither an attempt to curry favor nor did it shift blame to the defendant.
Because the co-defendant’s statement satisfies the four requirements for a statement against interest, it should have been admitted. This issue also affected the trial court’s ruling on the defendant’s motion to sever the trials.

The Motion to Sever

Pre-trial, both the defendant and co-defendant moved to sever their trials. In his motion, the defendant argued that he intended to admit certain statements made by the co-defendant. He argued a joint trial would expose the jury to the co-defendant’s statements which were inadmissible against him. Defense counsel argued that he wanted to introduce the co-defendant’s suppressed statement, which also warranted separate trials.
The trial court denied the motion to sever, but indicated it would reconsider after jury selection. The court later clarified there would be no severance and it would exclude any problematic statements *555 as a remedy. At the end of the defendant’s case, defense counsel renewed the motion to sever, which the court denied.
The defendant argues the trial court erred by failing to sever the defendant’s and co-defendant’s trials, which resulted in a fundamentally unfair trial. We agree and reverse.
Florida Rulé of Criminal Procedure 3.152(b)(1)(A) requires a severance before trial when necessary “to promote a fair determination of the guilt or innocence of [one] or more defendants.” “A motion for severance should be granted if there is evidence directed at a co-defendant'which is prejudicial to [the] defendant.” Hernandez v. State, 570 So.2d 404, 405 (Fla. 2d DCA 1990).
Here, the defendant wanted to introduce the co-defendant’s statement as discussed above. Rather than sever the trial, the court wrongly excluded the co-defendant’s statement. In addition, the court admitted the co-defendant’s jail calls, which indicated that he may have turned a blind eye to what was. contained in the backpack. These statements would not have been admissible in the defendant’s case had he been tried separately. See § 90.803(18), Fla. Stat. (2014).
The court attempted to alleviate the prejudice by instructing the jury to consider the co-defendant’s statements against him only. However, the combination of the exclusion of the co-defendant’s statement against interest and the admission of the co-defendant’s jail calls left the defendant without exculpatory evidence and with inadmissible inculpatory evidence. In short, the defendant got the worst of both worlds. That simply would not have happened had the court severed the trial.

The Willful Blindness Instruction

The failure to sever the trial was then compounded by the willful blindness instruction given by the court. The defendant argues the instructions confused the jury as indicated by the' two questions it asked. The State responds the defendant failed to preserve the issue and no confusion was created by the instructions.
During the charge conference, the State asked for standard instruction 3.3(h) on willful blindness. The State argued the instruction was applicable because both the defendant’s and co-defendant’s jail calls revealed that they willfully ignored the backpack’s contents. The Staté argued the co-defendant’s admission that the target’s girlfriend called him and told him the police were going to raid the house should have raised the co-defendant’s suspicion.
Defense counsel objected and argued the State failed to meet its burden to show the' defendant did not desire to know the truth. The only evidence in support was the co-defendant’s jail calls, which could be considered against the co-defendant only. The defendant made no similar statement.
The trial court accepted the State’s willful blindness instruction.[3]
The State also requested a principals instruction. Defense counsel objected and argued the instruction was confusing and *556 conflicted with the other instruction; The principals instruction requires knowledge of the criminal actions of the other person for liability; whereas, the willful blindness instruction requires the person to deliberately refrain from knowing what’s happening. It does not appear the court ever expressly ruled on the State’s principals instruction, but it did adopt the willful blindness instruction. The court instructed the jury on both.
During closing, the State urged the jury to follow the willful blindness instruction and find that the defendant was willfully blind, but also acted as a principal in helping the co-defendant. During jury deliberations, the jury asked:
(1) “Is proximity to the back pack part of willful blindness[?]”
(2) “Clarification of willful blindness[?]”
The judge told the jury to rely on the instructions and the evidence.
“‘Generally speaking, the standard of review for. jury instructions is abuse of discretion,’ but that ‘discretion, as with any issue of law is strictly limited by case law.’ ” Silver v. State, 149 So.3d 54, 57 (Fla. 4th DCA 2014) (citation omitted).
The defendant argues the trial court erred in giving a willful blindness instruction because the evidence did not suggest the defendant believed the backpack contained contraband, but chose to avoid learning about its contents. The State responds that the instruction was proper because the defendant denied having knowledge of the backpack’s contents, but was involved in retrieving the backpack from the house. The defendant replies that the trip to the residence was not so suspicious to warrant the instruction.
“The willful blindness doctrine is ‘that' if a ’party has his suspicion aroused but then deliberately omits to make further inquiries, because he wishes to remain in ignorance, he is deemed to have knowledge.’ ” Salomon v. State, 126 So.3d 1185, 1187 (Fla. 4th DCA 2012) (quoting Hallman v. State, 633 So.2d 1116, 1117 (Fla. 3d DCA 1994)).
A Jewell instruction “should not be given in every case in which a defendant claims a lack of knowledge, ‘but only in those comparatively rare cases where ... there are facts that point in the direction of deliberate ignorance.’ ”
The instruction should not be given unless evidence is admitted supporting the inference that the defendant “purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution.” Further, a Jewell instruction should not be given when the evidence admitted at trial is “consistent only with a theory supporting the defendants’ actual knowledge, rather than conscious avoidance on their part.”
Id. (alteration in original) (emphasis added) (quoting Desilien v. State, 595 So.2d 1046, 1047-48 (Fla. 4th DCA 1992)); see United States v. Jewell, 532 F.2d 697, 700 (9th Cir.1976).
There are few Florida cases which approve the use of the instruction. See, e.g., Andrews v. State, 536 So.2d 1108, 1109-11 (Fla. 4th DCA 1988) (approving use' of instruction where defendant was paid to pick up a suitcase in the trunk of a cab and take it back to Massachusetts to place in the trunk of another car, but reversing because instruction was inadequate). Similarly, there is little Florida case law rejecting the use of the instruction. See, e.g,, Salomon, 126 So.3d at 1185-87 (finding the instruction inappropriate, but the error harmless because the defendant had actual knowledge of the robbery); Desilien, 595 So.2d at 1046-48 (rejecting the instruction where the defendant had actual *557 knowledge, but finding the error was harmless).
Here, the defendant had been moving items from the house to the storage unit all day. On his last trip, he went into the house with the co-defendant. They quickly left and drove back to the storage unit with the co-defendant carrying only the backpack. The co-defendant kept the backpack on the floor of the front passenger seat. These facts do not suggest the defendant believed the backpack contained contraband, but chose not to find out what was in the backpack. They do not resemble the facts in cases where the willful blindness instruction was correctly given.
In summary, we find error in the exclusion of the co-defendant’s statement against interest, the denial of the defendant’s motion to sever, and use of the willful blindness instruction given the facts of this case. We therefore reverse and remand for a new trial.

Reversed, and Remanded for a new trial.

CIKLIN, C.J., and TAYLOR J., concur.

. The motion to suppress was based on the ' co-defendant’s invocation of his right to counsel.

. United States v. Young Bros., 728 F,2.d 682, 691 (5th Cir.1984) ("Rule 804(a)(1) requires an express assertion of the privilege and a ruling by the court that the privilege constitutes unavailability, see 4 Weinstein's Evidence ¶ 804(a)(01) (1976), but here the existence of the privilege and [co-defendant’s] right to assert it and [co-defendant’s] unavailability as a witness are patent. The trial court declared the evidence inadmissible before reaching issues raised by Rule 804. It would.be mere formalism to abjure the merits of [defendant’s] claim in these circumstances.” (third alteration in original) (citation omitted)).

. The court gave the following instruction:
In some cases, the issue to be determined is whether the defendant had knowledge of. a certain fact. Florida law recognizes a concept known as willful blindness, which is sometimes referred to as "deliberate avoidance of positive knowledge.” Willful blindness occurs when a person has his or her suspicion aroused about a particular fact, realized its probability, but deliberately refrained from obtaining 1 confirmation because he or she wanted to remain in ignorance. A person who engages in willful blindness is deemed to have knowledge of that fact. ‘ :